May it please the court. Evan Howes for James Angulo Quintero. This is Mr. Angulo Quintero's second appeal in this case. We've raised two errors, one under the guidelines, one statutory. The government has conceded the statutory error, so I'm going to focus on the guidelines issue. But before I get there, it is important to note that the BOP website currently sets Mr. Angulo Quintero's release date as the end of May next year. That's important because it means that even if Mr. Angulo Quintero was sentenced to the high end of the range that should have applied, but for this error, he would be eligible for release today. Now your honors, between Mr. Angulo Quintero's first and second appeals in this case, this court's precedent changed and it changed in his favor. The court's intervening decision in Herald vindicated Mr. Angulo Quintero's original argument that his Texas burglary convictions qualified for a lower range under the 2015 guidelines. That means that anchoring his sentence to the higher range produced by the 2016 guidelines violated the ex post facto clause. Now the government has employed kind of a kitchen sink approach in this case, and I'm happy and capable to respond to any of the varying positions that they have in this case, but first I would like to respond to the invited error argument because I think that's the quickest to dispose of. We have recognized from the beginning in this case that we missed this error and we failed to preserve it, but that is a forfeiture. It is not an invitation to error. This court recently recognized in United States v. Lerma that in order for counsel statements to qualify as inviting error, they have to evince an intent to convince the district court to do something it wouldn't have otherwise done. But if you look to counsel statements in this case, they do not fit that description. In this case, first of all, at the time there was no error to invite. The Uribe squarely foreclosed any issue as to application of the 2015 guidelines, and so it isn't natural to say that because since the district court was legally bound to apply the 2016 guidelines that anything that counsel said could have induced the court to do something it wasn't otherwise already going to do. And in any event, if you look at counsel statements here, her response, yes, your honor, to the question, are we applying the 2016 guidelines here, simply cannot be read to be an invitation to error and to ask the court to do something it wasn't already disposed of doing or to really to ask the court to apply one set of guidelines over the other, and that's the difference here. So what we have is we should be on review in this case, and that takes us to an issue that the government doesn't dispute, and that's whether or not we have the right. It's a threshold issue to even bring these claims. We think there's good reason that the government doesn't dispute that the law, the case doctrine, the mandate rule, and waiver don't apply here. The intervening change in the law, Harold, overcomes all of those procedural obstacles. It's a well-recognized exception to the scope of the mandate. It's a well-recognized exception to the law of the case. Why would the law of the case apply anyway? I don't think it would, your honors, but I mean, I was belt and suspenders, you know. What would be the, I mean, it's not that it went back and it got, there's not a law of the case. Well, your honor, the original opinion, this is the second appeal. Right, but it didn't say, it didn't take a position. I don't understand how law of the case would apply. Your honor, I am happy to give up any. But maybe, but I'm not saying, for my colleagues may think it does, so if you want to argue it more, you can. Well, I have no desire to waste the court's time on arguments that the court accepts. Thank you. We're for that. Right, well, look, what we really have here is a straightforward application of the plain error doctrine. If we go to the first and second prongs, the ex post facto violation here is clear and it's obvious after Harold, and it became so. Why don't you speak to prong four under Rosales-Morales? Absolutely, Judge Haynes. If we turn to the discretion prong, this is the ordinary case of the Supreme Court referenced in Rosales-Morales. We have a plain guidelines error and a reasonable likelihood of a lower sentence. And of I'm not exactly sure if the government's going to claim that there's any countervailing factors in this case, but we don't think that there are. If you look to the way the court described countervailing factors, they talked about those as the kind of things that would satisfy the court of appeals, that the fourth prong interest in fairness, integrity, and public reputation of the judicial system would be preserved even if the error was left in place. In other words, a sufficiently countervailing factor, I think, would have to essentially nullify the effects that the Supreme Court recognized in that case. And if anything, this case involves several factors that seriously intensify the harmful effects that concern the high court. First of all, this isn't just a guidelines error. This is a Our Constitution says that fundamental fairness requires a defendant to be sentenced according to the law as it existed at the time he committed his offense. And it's not disputed in this case that at the time Mr. Angulo-Quintero reentered the United States, the 2015 guidelines was the existing law. So because the error here, Mr. Angulo-Quintero was punished according to law that did not exist when he That obviously affects the fundamental fairness of the proceedings. And that's something that our founders recognized. And the application of that from statutory law to guidelines is clear after Pew. What happens if the Supreme Court grants, if they have not ruled on error? No, Judge King, the Supreme Court has not ruled. The government cert petition is pending right now. It will likely be considered at the conference here at the end of September. The government has explicitly, or the Solicitor General, I should say, has explicitly indicated to the Supreme Court that they would be happy for the court to hold Harold and the companion case, Quarles, that raises the same issue for the other burglary case that is going to be decided this term. So it's potential, it's likely that there won't be a decision on that for well up to a year. It could be two years. And that doesn't help your client who would be out today. This is not one where we can say, well, he's not going to be out for 20 years. And so we might as well just wait around for the court to give us additional guidance. Is that your position? Yes, Judge Elrod. In fact, that should have been my first answer. I appreciate it. This is a case where the court should act. It's the court's current precedent, unless and until it's changed. Not unless and until there's a chance that it might change, and not even after cert is granted. The government certainly benefited from that rule repeatedly last year, or in the last couple years, with DiMaia and the Gonzales-Longoria 16B issue. And it also benefited from that rule in Rosales-Morales cases where this court issued several cases saying we're not going to withhold application of the fourth prong. Well, the reality is that it's not a matter of equalizing other cases and who benefited in other cases. The reality is, if Harold's right, Mr. Quintero can never get back those months that he shouldn't have spent in prison, whereas if it's wrong, he can be re-sentenced yet again if the government keeps this case alive by way of a petition for a hearing and cert and so on, right? That's true, but I would say Mr. Angulo Quintero's interests are a little bit weightier than the government's in freedom. Well, didn't I just say that? He can't get those months back, whereas he can be put back in prison if he should have served an extra 10 months that he didn't. Am I not clear on that? I think that benefits you. Yes, I misunderstood your point. That's entirely true. Not every question is antagonistic to the person receiving it. Point taken, Judge Haynes. So even if you were to lose on this argument in total today, assuming arguendo, you're still entitled to reformation? Yes, that would be the second issue. After DiMaia, it's very clear that the burglary conviction does not count as an aggravated felony as burglary or as a crime of violence. So like we've done in many cases recently, we would need to remand to switch it, even if you were to not be successful. And I'm not foreshadowing. Right, that's exactly what we've asked for, and the government has actually said that it agrees that that's the appropriate remedy in this case. And I don't understand it to be suggesting otherwise, that we shouldn't correct the judgment. Do you have anything else for us, counsel? If the court has no further questions, I'm happy to cede my time back to the court. Thank you, and you've saved time for rebuttal. May it please the court. Audrey Maness on behalf of the United States. This is my first time appearing before the court. Your honors, there are two bases on which this court can affirm the sentence below. First, to the extent there was any error here, it was invited by the defendant, both at the first and the second sentencing hearing. And second, even if this court is reluctant to find invited error, it can affirm under prongs three and four of plain error review. Mr. Quintero has not met his showing under those prongs. I mean, is there much left of three in a sentencing guideline error case? I think there is, your honor. And tell me here specifically. Sure. In this unusual situation where we've been through not one but two sentencing hearings, the first in which the guidelines range was correctly calculated at 57 to 71 months, Mr. Quintero got a term of 46 months imprisonment. It goes up on appeal. It comes back. There's a second sentencing hearing. This time the calculation is 37 to 46 months. The defendant asked for a downward variance. The court said no. It believed that 46 months was the appropriate sentence for this defendant. It fully complied with the 3553A factors and considered the criminal history and characteristics of the defendant and said again, 46 months. So both times here under two very different guideline ranges, the district court said this defendant, the appropriate sentence for this defendant given these circumstances is 46 months. He didn't have to upwardly vary to do it though, did he? He did not. It was at the top of the range. Right. He would have to upwardly vary on the third send back and he didn't give any of that magic language that sometimes says that they would have given the sentence in any event. It's true, Your Honor. He did not give the magic language, though there is some question about how much worse... Whether it could be magic or not. That magic language, yes. The question's a little bit flippant in that we call it magic language. He doesn't give any indication that he's going to give 46 months no matter what the guidelines say. But he also doesn't give any indication that he would give any different sentence if the guidelines range were lower. But that's not the test for prong three. It's on the government to show that he would give the same sentence. And given that he would have to do an upward variance and he's not said, I'm going to give that sentence no matter what, there's not really anything for you to point to in prong three other than he gave the same sentence twice which was within guideline sentence. Your Honor, I think that the burden is actually on the defendant on prong three. United States v. Olano tells us that the defendant bears the burden of persuasion to show that... And they bear the burden, right, by saying we would be in a different range. And then the government comes forward and says, but no, the court would give this same sentence anyway. That's a defense to the prong three argument, not an affirmative point. I understand, Your Honor. But I think here that there's enough on the record, on both records, to show that Judge Hittner very much believed here that the appropriate sentence was 46 months. And he believed it even when the defendant requested a downward variance at that second sentencing hearing. That variance that would have put the defendant in what defense counsel says is now the correct range. And the district court was very careful to go through Mr. Quintero's extensive criminal history and to say that 46 months is really justified here. But it's really different to refuse to grant a downward variance as to grant an upward variance. Those are two very different decisions that a district court makes. I understand, Your Honor. That is true. Okay. Melina Martinez says, where the record is silent as to what the district court might have done had it considered the correct guidance range, the court's reliance on an incorrect range in most cases will suffice to show an effect on the defendant's substantial rights. In most cases. And, Your Honor, I would say this is not in most cases. Again, because we have two sentences here that we're looking at, two sentences that were exactly the same. Do you have anything to argue on prong four? I do, Your Honor. And I think if the court is reluctant to find that the defendant has not met prong three, it can certainly affirm under prong four. I understand that Rosales Morales tells us in the ordinary case that this would require sending the case back to the district court. However, again, this is not the ordinary case. We've been through two sentences below, both of which resulted in the same sentence. We have a defendant here who, during the first sentencing hearing, elected to use the 2016 guidelines. And again, in the second sentencing hearing, elected to use the 2016 guidelines. I'm guessing wouldn't make the same election on the third sentencing. I think you're right, Judge Ains. Yes. However, there's been an affirmative action on the part of the defendant, which this court has held in the past, constitutes invited error. I think that's a factor that if you're unwilling to go so far as to find invited error, you can factor that into the fourth prong. That would be a countervailing consideration. Two sentencing hearings, a defendant who has pursued the 2016 guidelines in both hearings. And in the first hearing, when Judge Hittner made the calculations, his calculations were correct, as now has been confirmed by the Sentencing Commission's most recent set of amendments. I think that's a factor to consider as well, is that Judge Hittner got it right the first time, despite the first appeal. So with the two sentences, the same sentence, and the fact that we believe the defendant invited the error here, those are all considerations that can be taken to account under the fourth prong. And that's enough to show that this really doesn't need to be sent back for a third resentencing. And Your Honors, I don't... Do you agree with the reformation point? I do, Your Honor. Whatever you decide on the first argument, under the current state of the law, the judgment will need to be reformed from a B2 to a B1. Anything further? I think we have your argument. Thank you. Thank you. Do you have anything further, counsel? Just three points, Your Honor. Really brief. Judge Haynes, you stole my thunder on the third prong. I was going to read the exact quote. I think that that does dispose of the third prong argument. The record here is silent. Well, I mean, but what about the fact that, you know, we don't usually have the judge having two chances with two different guidelines to do what they do. And here the judge keeps saying 46. Well, that's true. I mean, does it make sense to send it back again? We've got another 46. I think . . . Can't just keep appealing this thing until he finally gets out of prison. And that is his right, as long as, you know, he's pursuing non-frivolous issues. And in this case, he is. I'll get that. And I don't think it's a fair characterization to say this judge intended to impose 46 from the get-go, and that's going to always be the sentence. As Judge Elrod indicated, he would have to impose a substantial upward variance if we went back another time. And let's remember, we raised the very issue that we are talking about right now in our pleadings the day after Mathis was filed at the original sentencing hearing. The very argument that prevailed in Herald. And I know your Honor was in writing the dissenting opinion. I'm applying, Harold. Right. And so this is not a case where there's any windfall to the defendant. If anything, the defendant was deprived of the correct view of the law at the original sentencing hearing. The district, if Uribe had been decided correctly, he would have been at that 24 to 30 month range. And the district court could have had the chance to vary upward then. It gave no indication at the original sentencing that his criminal history. I mean, it talked about his criminal history. But this is a judge that is not shy about going above the guidelines range if the criminal history bothers him. And he didn't do it here. In fact, he departed significantly. And I encourage the court to read Mr. Angulo-Quintero's allocution at the first sentencing hearing. It mattered. He talked very poetically about how hard his life was in Colombia growing up. And that moved this district judge. So that matters. And that folds into the overall point that I wanted to assess here in the government's fourth prong argument and that there's countervailing factors here. It overlooks the significant fact that in Rosales-Morales, the Supreme Court was clear to say that when we've got a defendant who's likely serving extra time than is required under an error that's made, a plain error, that we have to remember that we're talking about people here. The 46 months, the 30 months, the 57 to 70 month range that applied at the original sentencing, those numbers mean far less to the lawyers in this room and the court than it does to Mr. Angulo-Quintero. And I think the most important thing here is that given the 16-month disparity, it is reasonably likely that Mr. Angulo-Quintero has already served well beyond the sentence that he would have received but for this error. So we are not concerned here only with a risk that Mr. Angulo-Quintero would linger longer in prison than the law requires. He already has. And that is why this is not a case that involves the type of countervailing factors that would cause, that should cause this court to deny discretionary review. And so it's for these reasons that this court should reverse the judgment of the Court of Appeals. And if there are no further questions, I'll submit the case. Thank you.